## CIRCUIT COURT OF KING GEORGE COUNTY

Presidential Lakes
Property Owners'
Association, Inc.

v.

Presidential Lakes
Development Co., Inc., et al.

June 12, 1998

Case No. (Chan.) 93-19

BY JUDGE JAMES W. HALEY, JR.

In this cause to reform a subdivision deed of dedication based upon mutual mistake of fact, the primary issues for resolution are: (1) are trustees and mortgagees necessary parties to the cause; (2) does the proposed reformation deprive any lot owners of property rights, and (3) has mutual mistake been established by the requisite evidentiary standard.

### I. *Facts*

In 1993, the Presidential Lakes Property Owners' Association, Inc. (the "Association") filed a Bill of Complaint to reform the Deed of Dedication of Presidential Lakes Subdivision based upon the "mutual mistake of the developer and of those submitting to its provisions through acceptance of deeds to Presidential Lakes lots … ." Specific ancillary relief was the excision of Section 14 from the subdivision itself.

Article II, paragraph 4, of the existing deed of dedication grants each subdivision lot-owner "a right of easement of and to the Common Properties

... and such easement shall be appurtenant to and shall pass with the title ... ." The Common Properties include substantial improvements, such as lakes, roads, swimming pool, tennis courts, etc., the majority of which are located in Sections 1 through 13 of the subdivision. A number of Section 14 lot-owners filed *pro se* answers to the Bill of Complaint, objecting to the ancillary relief on the grounds it would deprive them of the use of the Common Properties.

Linda Ann Williams, Vice-President of the Association, testified that under the proposed reformation of the Deed of Dedication and the excision, current lot owners in Section 14 could remain members of the Association and could made use of all the Common Properties situated within sections 1 through 13 for some limited time, or for five years.

In initiating the cause, the Association did not seek service of process of the Bill on trustees named in, or on mortgagees secured by, deeds of trust on lots in the subdivision. The Deed of Dedication does not address the question of notice of proposed amendments to trustees or mortgagees.

## II. *Are trustees and mortgagees necessary parties to the cause?*

A Decree of Reference dated March 21, 1995, inquired of the Commissioner in Chancery "whether ... necessary parties are all before the court ... to exercise necessary jurisdiction and to effect the reformation and other relief sought ... ."

The Commissioner reported to the court that: (1) the trustees and mortgagees were necessary parties not joined, (2) the proposed excision of Section 14 would constitute a deprivation of property rights belonging to lot-owners of that section, and (3) the evidence was insufficient to establish mutual mistake.

The procedural posture of this cause before the court is well established. Though the report of a Commissioner in Chancery is entitled to substantial deference, especially as to findings of fact, it is nonetheless the duty of the chancellor to apply correct principles of law. Va. Code § 8.01-610; *Hoffecker v. Hoffecker,* 200 Va. 119, 104 S.E.2d 771 (1958).

In his report, the Commissioner concluded that the notice provisions of Code § 55-515.1(B), enacted in 1997,[1] are declarative of existing law, that is, notice to trustees and mortgagees is required when the proposed amendment

---

[1] Code § 55-515.1, effective July 1, 1997, permits notice by mail to mortgagees of proposed amendments to a subdivision Deed of Dedication, providing the amendments do not "materially impair or affect a lot as collateral ... ."

to a Deed of Dedication can materially impair collateral. Accordingly, because of this underlying principle, Code § 55-515.1 is applicable to this proceeding, even if, as here, the Deed of Dedication and the initiation of proceedings to amend the same predate the effective date of Code § 55-515.1. The court concurs.

Trustees have been held necessary parties to suits to enforce mechanics liens, because they have an interest in the property which can be "defeated or *diminished* as a result of the proceeding." (Emphasis supplied.) *Mendenhall v. Cooper,* 239 Va. 71, 75, 384 S.E.2d 468, 470 (1990), quoting *Raney v. Four Thirty Seven Land Co.,* 233 Va. 513, 519-520, 357 S.E.2d 733, 736 (1987); *see also James T. Bush Const. Co. v. Patel,* 243 Va. 84, 86, 412 S.E.2d 703, 705 (1992). Mortgagees, or beneficiaries of a deed of trust, are likewise necessary parties. *Walt Robbins, Inc. v. Damon Corp.,* 232 Va. 43, 47, 348 S.E.2d 223, 226 (1986).

"Necessary parties include all persons ... however numerous, materially interested, either legally or beneficially in the subject matter of the suit." *Kennedy Coal Co. v. Buckhorn Coal Corp.,* 140 Va. 37, 49, 124 S.E. 482, 486 (1924), quoting *Buchanan Co. v. Smith's Heirs,* 115 Va. 704, 707-708, 80 S.E. 794, 785 (1914). The principle that such persons are necessary parties "is designed to avoid depriving a person of ... property without giving that person an opportunity to be heard." *Atkisson v. Wexford Assocs.,* 254 Va. 449, 456, 493 S.E.2d 524, 528 (1997).

The Association prays that the court reform the Deed of Dedication so that the amended Deed not apply to Section 14 of the Subdivision, that Section 14 be excised from the subdivision, that the lot-owners of Section 14 no longer be members of the Association, that the Association "have no maintenance responsibilities over any land it owns in Section 14 . . ." upon deeding such land to a future property owners' association of Section 14 lot-owners, if one is formed.

The court concludes that the requested reformation of the Deed of Dedication of Presidential Lakes Subdivision will materially impair the collateral of mortgagees who are the beneficiaries of deeds of trust secured by lots in Section 14 of the subdivision. Accordingly, those trustees and mortgagees are necessary parties not joined in this proceeding, and Complainant's exception to the Commissioner's Report on this point is overruled.

### III. *Does the proposed reformation deprive any lot owners of property rights?*

Code § 55-50 states in part: "Every deed conveying land shall be construed to include all ... privileges and appurtenances of every kind belonging to the lands therein embraced ... ."

In *Meagher v. Appalachian Power Co.,* 195 Va. 138, 145-146, 77 S.E.2d 461, 466 (1953), the court stated that "restrictive covenants create a valuable right in property ... . [and] ... a breach of the covenants and restrictions ... constitute a taking or damaging of property rights for which compensation must be paid."

The right of lot-owners in Section 14 to the use of the Common Properties and the amenities constructed thereon is a property right. And that right cannot be taken for private use without compensation or agreement. "The taking of private property for private purposes cannot be authorized even by legislative acts ... ." *Fallsburg Power and Mfg. Co. v. Alexander,* 101 Va. 98, 105, 43 S.E. 194, 199 (1902), *quoting Eureka Basin,* 96 N.Y. 42 (sic). In *Phillips v. Foster,* 215 Va. 543, 546, 211 S.E.2d 93, 95 (1975), the court stated: "It has been universally held that the spirit of the Constitution of Virginia and the Federal Constitution prohibits the taking of private property for private use under any conditions." *See also Boyd v. C. L. Ritter Lumber Co.,* 119 Va. 348, 89 S.E. 273 (1916); Art. I, § 11, Constitution of Virginia.

In light of the foregoing, the court finds that Section 14 cannot be severed from Presidential Lakes subdivision without the consent of the owners, trustees, and mortgagees of lots in that section. Accordingly, the exception to the Commissioner's Report on this point is overruled.

### IV. *Has mutual mistake been established by the requisite evidentiary standard?*

In *Gibbs v. Price,* 207 Va. 448, 450, 150 S.E.2d 551, 553 (1966), the court stated:

To support reformation on the ground of mutual mistake, the proof "must be clear and satisfactory, leaving but little, if any, doubt of the mistake." *French v. Chapman,* 88 Va. 317, 13 S.E. 479, 481 (1891); see *Larchmont Properties v. Cooperman,* 195 Va. 784, 80 S.E.2d 733 (1954).

*See also Charles v. McClanahan*, 130 Va. 682, 686, 108 S.E. 858, 861 (1921): "in order to justify a court of equity in undertaking to correct a deed, which the parties have accepted, the evidence must be clear, convincing, and satisfactory ... ."

A mistake of fact must be mutual, "and may consist either in the expression of their agreement, or in some matter inducing or influencing the agreement, or in some matter to which the agreement is to be applied." *Briggs v. Watkins*, 112 Va. 14, 25, 70 S.E. 551, 554 (1911). Reformation is justified where "certain facts are assumed by both parties as the basis of the contract, and it subsequently appears *that such facts did not exist . . .*" at the time of execution of the contract. (Emphasis supplied.) *Virginia Iron, Coal and Coke Co. v. Graham*, 124 Va. 692, 708, 98 S.E. 659, 664 (1919); *see also, Jennings v. Jennings,* 112 Va. App. 1187, 1192, 409 S.E.2d 8, 12 (1991).

The Complainant maintains that the mutual mistakes of facts justifying reformation include: (1) that Section 14 is geographically remote from Sections 1 through 13; (2) that the topography is steeper in Section 14, affecting roads and perk sites; (3) that Section 14 requires different funding with respect to the maintenance of Common Properties; (4) that Section 14 has sewer facilities while Sections 1 through 13 do not; (5) that the setback requirements of Section 14 are different from those in Sections 1 through 13.

Either these recited differences between Section 14 and Sections 1 through 13 existed and could not have been but apparent at the time lot owners accepted the Deed of Dedication, or have evolved since the lot owners accepted the Deed of Dedication. In short, the differences are not mistakes of fact justifying reformation based upon clear and convincing evidence.

Accordingly, the exception to the Commissioner's report on this point is overruled, as are the other exceptions noted by the Association.

## V. *Order*

Susan S. Williams, Esquire, counsel for Joseph L. Williams, and *pro se,* will prepare a decree setting forth the court's ruling, which decree shall incorporate this written opinion by reference. Because of the number of parties who have entered an appearance in this cause, a circulation of that decree does not appear feasible. Accordingly, it is suggested that Mrs. Williams give notice to those parties as to the date of presentation of the decree, such date to be ascertained from the Clerk of the Circuit Court of King George County. This procedure allows parties, if they be so advised, to

present exceptions to the court's ruling on that date. The cost of postage to effect this mailing shall be paid as costs by the Association within thirty days of entry of the decree, and Mrs. Williams shall present a bill for the same on the date determined for entry of the decree.